IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Fred Freeman,                              ) CIVIL ACTION NO. 9:12-3280-DCN-BM
                                           )
              Plaintiff,                    )
                                           )
v.                                         )
                                           )
John R. Pate, Warden; Captain DeLoach;     )  **REPORT AND RECOMMENDATION**
Doctor Thomas E. Byrne, Jamie D.           )
Spalding, Nurse; Pamela C. Derrick,        )
Nurse Director; Tina G. Thames, Nurse;     )
Allison Atkinson, Nurse; and South         )
Carolina Department of Corrections,        )
                                           )
              Defendants.                   )
_____)

   This action has been filed by the Plaintiff,[1] pro se, pursuant to 42 U.S.C. § 1983.

Plaintiff, who at the time this action was filed was an inmate with the South Carolina Department

of Corrections (SCDC),[2] alleges violations of his constitutional rights by the named natural

Defendants, all employees of the SCDC.  In an amendment to his Complaint filed January 9, 2013

(granted January 15, 2013) Plaintiff added the SCDC as a party Defendant under a negligence theory

pursuant to the South Carolina Tort Claims Act (SCTCA).

   By Order filed July 31, 2013, to the extent Plaintiff was asserting a constitutional

---

   [1]Plaintiff is a frequent filer of pro se litigation in this Court.  Aloe Creme Laboratories, Inc. v. Francine Co., 425 F.2d 1295, 1296 (5th Cir. 1970)[a federal court may take judicial notice of the contents of its own records].

   [2]Plaintiff has, since the filing of this action, been released from custody.  See Court Docket No. 26 (Notice of Change of Address); see also Plaintiff's Memorandum in Opposition, p. 4.



claim of denial of access to the courts, that claim was dismissed. Any state law medical malpractice claim being asserted against the Defendant SCDC was also dismissed. <u>See</u> Order (Court Docket No. 101). <u>See also</u> Court Docket No. 40. With respect to Plaintiff's remaining claims, all of the Defendants except for the Defendant Thames filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on May 7, 2013. As the Plaintiff is proceeding <u>pro se</u>, a <u>Roseboro</u> order was entered by the Court on May 8, 2013, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted. Plaintiff thereafter filed a memorandum in opposition to these Defendants' motion on June 14, 2013, to which the Defendants filed a reply memorandum on July 18, 2013.

The remaining Defendant Tina Thames filed her own motion for summary judgment on July 19, 2013, following which a second <u>Roseboro</u> order was entered by the Court on July 22, 2013. Plaintiff filed a sur reply to the original motion for summary judgment on June 26, 2013, and then filed a response in opposition to Thames' motion for summary judgment on August 13, 2013.

These motions are now before the Court for disposition.[3]

## Discussion

Plaintiff alleges in his Verified Complaint[4] that (at this time this action was filed) he

---

[3]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed motions for summary judgment. As these are dispositive motions, this Report and Recommendation is entered for review by the Court.

[4]In this Circuit, verified complaints by <u>pro se</u> prisoners are to be considered as affidavits. <u>Williams v. Griffin</u>, 952 F.2d 820, 823 (4th Cir. 1991).



was an inmate at the Allendale Correctional Institution, part of the SCDC system.  Plaintiff alleges that on November 8, 2011 he was assaulted by another inmate named Cole, resulting in injuries to his head and left eye.  Plaintiff alleges that this has resulted in blurred vision and daily "head troubles".  Plaintiff alleges he was seen by the Defendant Nurse Thames, who told him there would be "swelling".  Plaintiff alleges that he was not properly evaluated or diagnosed by Nurse Thames and grieved the matter, during which the Defendant Dr. Thomas Byrne stated that during the examination of November 8, 2011 Plaintiff had not complained about eye problems.  Plaintiff also alleges that he was told by the Defendant John Pate (the Warden) that if he was experiencing eye problems, he should sign up for sick call.  However, Plaintiff again asserts that he told Thames on November 8, 2011 that he had been hit in the head and "temple", and that although he had waited to see the  Defendant Byrne, Byrne had refused to see him.

Plaintiff alleges he was seen again in sick call on December 30, 2011 by a "Nurse Jones".  Plaintiff was still complaining about his left eye hurting and blurred vision.  Plaintiff alleges that the Defendant Pate failed to address this matter out of retaliation, and that it was not until January 4, 2012, that the Defendant Dr. Byrne finally decided to see him, at which time Byrne advised him that he might have nerve damage as a result of the assault of November 8, 2011.  Plaintiff alleges that he has continued to repeatedly complain about his eye and head injuries on various occasions throughout 2012, but that Dr. Byrne told him that he would not get any help for damages to his eye or head because he had less than two (2) years left on his sentence.  Plaintiff alleges he asked to see a specialist or an eye doctor for his complaints, but was refused.  Plaintiff alleges that (at the time of the filing of the Complaint) it had been "nearly 1 year" since his injuries, that his left eye is still blurred, and that he suffers from consistent and sharp pain where he was hit



in the temple and head.

Plaintiff alleges that after receiving a response to his Step 2 Grievance appeal,[5] the Defendant Captain DeLoach came up to him in the cafeteria and laughed at him, to which Plaintiff responded by telling DeLoach that he did not fear him or anyone else they "sen[t] at me". Plaintiff additionally alleges that he did not have his medications refilled or reordered properly on various occasions, either because Dr. Byrne had gone on vacation and not ordered his refills and/or had instructed the nurses not to refill his prescriptions, forcing Plaintiff to endure a significant amount of time without his prescription medication (apparently primarily Ibuprofen). Plaintiff alleges that he repeatedly complained to the Defendant Nurse Atkinson, who refused to order him refills and also told him that it was "Dr. Byrne fault". Plaintiff alleges he grieved this conduct as well.

Plaintiff alleges that on one occasion he was at the nurse station having his vital signs taken by a Nurse "Fishburn", when the Defendant Nurse Derrick entered the nurse's station and ordered Fishburn to discontinue treating the Plaintiff and for Plaintiff to leave the medical office. Plaintiff alleges that Nurse Derrick is "fully aware" that he suffers from a variety of medical abnormalities, including spinal cord issues, spinal stenosis, degenerative problems (apparently concerning his discs), that he is an epileptic, and that he suffers from "annuglar" tears, and that in addition to failing to render him care for these ailments, the Defendants Derrick and Thames also

---

[5]This Court can take judicial notice from previous cases filed in this Court that, under the SCDC Grievance Procedure, all inmate grievances must be filed within fifteen (15) days of the alleged incident, and if a grievance is denied by the Warden (Step 1), the inmate may then appeal the Warden's decision by filing a Step 2 appeal with the Division Director of Operations. See Aloe Creme Laboratories, Inc. v. Francine Co, 425 F.2d 1295, 1296 (5th Cir. 1970); see also Branton v. Ozmint, No. 08-2306, 2009 WL 1457144 at * 2 (D.S.C. May 22, 2009); Jenkins v. South Carolina Dept. of Corrections, No. 05-2800, 2006 WL 1083563 at * 5 (D.S.C. Apr. 18, 2006).



made "threatening statements" towards him.  Plaintiff further alleges that the medical Defendants refuse to provide him care for his impairments out of retaliation for Plaintiff filing grievances.

Plaintiff also alleges that the Defendants knew that inmate Cole had mental issues or problems and would "cause damage to me", alleging that Cole had a history of violence including that he had knifed someone in the face in the cafeteria, but that the Defendants (in particular the Defendant DeLoach) allowed Cole access to the Plaintiff out of retaliation for Plaintiff filing grievances.

Plaintiff alleges that all of his grievances concerning these various issues have been mishandled, primarily by the Defendant Pate.[6]  Plaintiff also alleges that the Defendants Byrne and Spalding (another Nurse) "celebrated the death of his nephew", and that he has repeatedly received "threats" from Byrne and Spalding.

Plaintiff seeks monetary damages for the Defendants' allegedly improper conduct, as well as proper medical care for his impairments.  Plaintiff has attached to his Complaint numerous exhibits, including medical summaries and grievances.  See generally, Verified Complaint, with attached Exhibits.

In support of summary judgment in the case, the Defendant Thomas Byrne has submitted an affidavit wherein he attests that he is a licensed physician employed by the SCDC to render medical care to inmates.  Byrne attests that he was Plaintiff's primary physician while Plaintiff was incarcerated at the Allendale Correctional Institution, and that copies of Plaintiff's medical records are attached to his affidavit.

---

[6]Plaintiff also refers in his Complaint to an individual named "Brunson" handling his grievances, although this individual is not listed as a Defendant in this case.



Dr. Byrne attests that he encountered Plaintiff on many occasions for various chronic complaints, including complaints of headaches, back pain, balance issues, and general pain. Dr. Byrne attests that Plaintiff had complained of the same or similar issues since he first began seeing him at ACI. Byrne attests that Plaintiff was also a "wheel chair bound" inmate who was prescribed Dilantin to prevent seizures, and although Plaintiff consistently complained about his Dilantin levels, they were checked and approved.[7] Dr. Byrne details Plaintiff's extensive medical history, including MRI's and numerous grants of medication, as well as that on occasion Plaintiff would become upset and uncooperative with medical staff. On the last entry prior to the incident alleged in the Complaint concerning Plaintiff being attacked by another inmate, Dr. Byrne attests that Plaintiff was seen in the seizure clinic on October 17, 2011, where he was complaining that he had never seen a specialist for his complaint and that he was feeling light headed with headaches. Dr. Byrne attests that Plaintiff was referred to a specialist and received an MRI of his brain, which was normal.

With respect to the alleged attack on the Plaintiff by his cell mate on November 8, 2011, Dr. Byrne attests that the medical clinic notes by Nurse Thames reflect that there was no bruising or acute injury after this alleged attack, with only a small abrasion on Plaintiff's calf which was cleaned and dressed, and no other injuries noted. See also, Exhibit [Medical Records], Encounter No. 612. Dr. Byrne attests that he did not see Plaintiff again until December 28, 2011, where Plaintiff was complaining that he wanted more Motrin.[8] Dr. Byrne attests that Plaintiff

---

[7]Several of Plaintiff's previous lawsuits have involved Plaintiff's medications and his complaints about what medications he received and in what dosages, including his prescription for Dilantin. Those cases have all been dismissed.

[8]The only entry in the health services notes between Plaintiff being seen by Nurse Thames on November 8, 2011 and then seen again by Dr. Byrne on December 28, 2011, is an entry note for
(continued...)



returned to sick call two days later on December 30, 2011, with the entry note for this date showing that Plaintiff was complaining about "a lot of health problems", including back pain and pain in the back of his head. Plaintiff complained that his head "still hurts", and that he did not get any Motrin the last time he tried to refill it. On examination no abnormality was noted to the back of the head, and Plaintiff was found to be in no acute distress. See also Exhibit [Medical Records], Encounter No. 615.

Dr. Byrne attests that he spoke to Plaintiff on January 4, 2012 where Plaintiff complained that he was never seen for a follow up from his attack. Byrne attests that he explained to Plaintiff that a follow up was not deemed necessary because he had no acute injuries. See also, Exhibit [Medical Records], Encounter No. 616. Dr. Byrne attests that Plaintiff reported to sick call again on February 21, 2012, at which time he was also complaining of blurriness in his eye. The Defendant Derrick examined Plaintiff's eye and head and found no abnormal findings. See also, Exhibit [Medical Records], Encounter No. 626. Dr. Byrne attests that he met with Plaintiff again on February 28, 2012, and during a discussion in which he explained to Plaintiff the nature of his chronic conditions, Plaintiff claimed that he [Byrne] had threatened to poison the Plaintiff. Dr. Byrne attests that he advised Plaintiff that he should see a psychiatrist, which made him angry. The medical records show that Plaintiff had multiple refills of his medications after that time.

Dr. Byrne attests that, after again complaining of eye problems, Plaintiff was given an eye exam on April 25, 2012, during which his visual acuity was found to be acceptable. See also, Exhibit [Medical Records], Encounter No. 635. Dr. Byrne attests that on May 7, 2012, Plaintiff

---

[8](...continued)
November 14, 2011, which indicates that Plaintiff had (apparently) sent in a complaint about a walker. See Exhibit [Medical Records], Encounter No. 613.



requested that he document that he [Plaintiff] may have nerve damage as a result of the attack, but that he explained to Plaintiff that whatever he had written in the medical records are the notes that exist with respect to Plaintiff's condition.  See also, Exhibit [Medical Records], Encounter No. 640.

Dr. Byrne attests that he saw Plaintiff for over six years and that in his medical opinion Plaintiff did not need any additional testing or referrals.  Dr. Byrne attests that Plaintiff complained about the same symptoms and conditions since he came to ACI, he was complaining about the same headaches and back pain even before the claimed incident, and that he suffered no injury as a result of his alleged attack.  Dr. Byrne attests that, in his opinion to a reasonable degree of medical certainty, most probably, that Plaintiff was treated with the proper standard of medical care at all times during his incarceration at ACI.  See generally, Byrne Affidavit dated May 6, 2013,[9] with attached Exhibits.

The Defendant Pamela Derrick has also submitted an affidavit wherein she attests that she is a licensed nurse employed by the SCDC as the Health Care Authority at ACI.  Nurse Derrick attests that she remembers treating Plaintiff, including but not limited to his visits involving his headaches, back pain, head pain, and medications.  Nurse Derrick attests that she does not recall a significant amount of direct interaction with Plaintiff outside of signing him up for sick call, referring him to Dr. Byrne, and monitoring other nurses who treated him, but that she does recall that Plaintiff was always able to answer her questions and follow her directions, and that at no point did she detect any signs of trauma or acute injuries to the Plaintiff, nor did any other nurse report signs of acute injuries, bruising or other signs of trauma.  Nurse Derrick attests that at no point was

---

[9]There is also a second affidavit in the exhibits from Dr. Byrne dated September 26, 2011, from one of Plaintiff's previous cases, Freeman v. Derrick, Civil Action No. 11-1205, which also discusses Plaintiff's medical history.



Plaintiff mistreated, misdiagnosed, or neglected in the care given to him during his incarceration at ACI, that in her opinion Plaintiff was treated with the appropriate nursing standard of care, and that to a reasonable degree of nursing certainty Plaintiff was treated with the appropriate standard of care for his back pain and urological complaints.  See generally, Derrick Affidavit.

  The Defendant Allison Atkinson has submitted an affidavit wherein she attests that she is a licensed nurse employed by the SCDC at ACI, that she remembers interacting with the Plaintiff on multiple occasions, and that on each such occasion his complaints were about the same problems and symptoms.  Nurse Atkinson attests that Plaintiff was always able to respond to her questions and follow her directions, and that she never noted any neurological deficits nor did she detect any acute injuries.  Nurse Atkinson further attests that she remembers Plaintiff as being fussy and uncooperative with his pill packs, and although Plaintiff filed a grievance against Dr. Byrne and her complaining that he was refused pain medication, Plaintiff was never denied any medication. See also, attached Exhibits [Step 1 and Step 2 Inmate Grievances], No. ACI-0038-12.  Nurse Atkinson attests that on this occasion she taped the side of Plaintiff's pill pack for him upon his request, and noted that he still had a substantial amount of medication left.  Nurse Atkinson attests that Plaintiff never requested a refill from her at that time, and that at no time did either she or Dr. Byrne refuse him pain medication.

  Nurse Atkinson attests that she encountered Plaintiff on another visit, where she performed an eye exam and took his vitals, and that she noted no significant defect in his eyes and that his vision was considered adequate.  See also Exhibit [Medical Records], Encounter No. 635. Nurse Atkinson attests that Plaintiff was frequently agitated and upset during his visits, that he would bring in long notes and read from them without making eye contact, would give long



speeches to medical staff about his complaints and his treatment, and that this occurred nearly every time Plaintiff visited medical. Nurse Atkinson attests that at no point was Plaintiff mistreated, misdiagnosed, or neglected in the care given him during his incarceration at ACI, that in her opinion Plaintiff was treated with the appropriate nursing standard of care, and that to a reasonable degree of nursing certainty Plaintiff was treated with the appropriate standard of care for his head, back, and eye complaints. See generally Atkinson Affidavit, with attached Exhibits.

The Defendants have also submitted copies of some other Requests to Staff Member forms and Grievance forms relating to the Plaintiff.

In opposition to the Defendants' motions for summary judgment, Plaintiff has submitted numerous exhibits, to include numerous Request to Staff Member forms wherein Plaintiff continues to complain about his medical condition and the medications and treatment he is receiving, and complains about how his grievances are being handled or processed. Plaintiff has also submitted copies of his medical records which reference a nephew giving him information on medical records, and that at one point in May 2010 Plaintiff reported that he was upset that Dr. Byrne had put in a medical record about Plaintiff mentioning the anniversary of a nephew's death, implying that he [Dr. Byrne] had "celebrated" this death. This medical entry has a notation from Dr. Byrne stating that he "did not say [anyone] celebrated his nephew's death". Plaintiff has also submitted copies of grievance documents wherein he is complaining about receipt of Ibuprofen and/or Motrin, with responses indicating that he has received his prescriptions. Finally, Plaintiff's exhibits include a result from an MRI of his lumbar spine in December 2003 (nine (9) years prior to the filing of this lawsuit), that show some mild degenerative disc disease but no significant paraspinal abnormalities and an unremarkable alignment. See generally, Plaintiff's Exhibits.

- 10 -



## Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the arguments and evidence submitted, the undersigned finds for the reasons set forth hereinbelow that the Defendants are entitled to summary judgment in this case.

## I.

With respect to Plaintiff's complaints concerning his medical care, in order to proceed with a claim for denial of medical care as a *constitutional violation*, Plaintiff must present evidence sufficient to create a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976);



Farmer v. Brennen, 511 U.S. 825, 837 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990). Plaintiff has failed to submit any such evidence. Rather, the evidence before this Court shows that Plaintiff received continuous and ongoing treatment for his medical complaints while at ACI.

The evidence shows that Plaintiff was regularly seen (not just for the medical complaints alleged in this lawsuit, but for various other medical problems as well) by nurses, nurse practitioners, and doctors. He also received MRI's and other medical tests, the results of which were discussed with him, and he was prescribed medications. The Defendant medical professionals have submitted affidavits attesting to the care Plaintiff received, and that such care met the applicable medical standard of care, as well as copies of Plaintiff's medical records showing his frequent access to, and evaluation by, medical personnel. None of the medical evidence provided to this Court shows that any named Defendant was deliberately indifferent to Plaintiff's serious medical needs. Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer, 511 U.S. at 837; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim].[10]

_____

[10]With respect to the non-medical personnel Defendants, to the extent they are included as Defendants under Plaintiff's medical claims, these Defendants were entitled to rely on the expertise of the medical professionals charged with providing medical care to the Plaintiff as an inmate at ACI. See Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995) [officials entitled to rely on judgment of medical personnel]; Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) [officials entitled to rely on expertise of medical personnel].



While Plaintiff has submitted numerous exhibits[11] in which he complains about his medical care and treatment - that is all that they show; that Plaintiff continuously complained about his medical care and treatment.  The response to Plaintiff's various Request to Staff Member forms and Grievances was that he was receiving appropriate medical care, and none of the actual *medical evidence* provided to the Court shows that any named Defendant, or anyone else, was being deliberately indifferent to his medical needs, or was refusing to examine and treat him for his complaints.[12]  See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)[Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim absent exceptional circumstances]; Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]).  Although Plaintiff obviously did not agree with the extent and nature of the medical care he received, he cannot simply allege in a conclusory fashion that he did not receive constitutionally adequate medical care or attention, otherwise provide no supporting evidence, and expect to survive summary judgment, particularly when the Defendants have submitted medical documents and evidence, supported by professional medical opinions, which refute Plaintiff's claims.  Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-

---

[11]In addition to the exhibits attached to his response in opposition to the Defendants' motions, Plaintiff also submitted fifty-one (51) pages of exhibits as an attachment to his Complaint. These exhibits consist primarily of copies of various grievances, requests to staff member forms, and selected pages from his medical records.

[12]Plaintiff also occasionally makes bizarre statements in his Grievance and/or Request to Staff Member documents, such as that Dr. Byrne might be trying to poison him by slipping cyanide into his medications.



diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim]; <u>Morgan v. Church's Fried Chicken</u>, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though <u>pro</u> <u>se</u> litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"].

Therefore, Plaintiff's medical claims asserted as a constitutional violation are subject to dismissal.[13]

## II.

To the extent Plaintiff is asserting that one or more of the Defendants' actions were taken against him out of retaliation for Plaintiff filing grievances, there is simply no evidence to support this conclusory and self-serving allegation. <u>See</u> <u>Atkinson v. Bohn</u>, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curiam) [speculative and conclusory allegations cannot support retaliation claim]; <u>LaCroix v. Williams</u>, No. 97-0790, 2000 WL 1375737 at *4 (W.D.N.Y. Sept. 21, 2000) ["Plaintiff's conclusory allegations aside, there is simply nothing in the record to support his version of the facts and plaintiff's claim for retaliation fails"]. None of the exhibits provided to the Court constitutes evidence to support Plaintiff's claim that the type of medical care and treatment he received, or any other actions taken against him or to which Plaintiff objects, were in retaliation for Plaintiff having filed grievances or civil lawsuits. Therefore, this claim should be dismissed. <u>Wright v. Vitall</u>, No.

---

[13]Plaintiff could, of course, have pursued a claim in state court if he believes that the medical care provided to him constituted malpractice. That is not a federal constitutional claim. <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976)["medical malpractice does not become a constitutional violation merely because the victim is a prisoner."]; <u>see</u> <u>DeShaney v. Winnebago County Dep't of Social Servs.</u>, 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; <u>Baker v. McClellan</u>, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]. However, to the extent Plaintiff had even intended to assert such a state law claim, it has already been dismissed. <u>See</u> Court Docket No. 40, pp. 9-10; Court Docket No. 101 [Order of Dismissal].



91-7539, 1991 WL 127597 at**1 (4th Cir. July 16, 1991) [Retaliation claim based on mere conclusory statements cannot withstand defendants' summary judgment motion]; Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995)[case dismissed where Plaintiff produced nothing beyond his own conclusory allegations suggesting that prison official's actions were motivated by a retaliatory animus]; Woods v. Edwards, 51 F.3d 577, 580-581 (5th Cir. 1995) [summary judgment affirmed where inmate offered no evidence other than his personal belief that the alleged retaliatory actions were based on his exercise of his rights].

### III.

With respect to Plaintiff's claims that at one point the Defendant Deloach laughed at him in the cafeteria, that at some point the Defendants Derrick and Thames made unspecified "threatening statements" towards him, and/or that the Defendants Byrne and Spalding may have at some point engaged in conduct which Plaintiff perceived as celebrating the death of his nephew or somehow threatened him, it is well established that the use of vile or vulgar or other types of inappropriate language is not a basis for a § 1983 claim. Malsh v. Austin, 901 F.Supp. 757 (S.D.N.Y. 1995)["Verbal assault, standing alone, is not a . . . cognizable injury in a 1983 civil rights action"]; Sluys v. Gribetz, 842 F.Supp. 764, 765 n.1 (S.D.N.Y. 1994), aff'd., Sluys v. Gribetz, 41 F.3d 1503 (2d Cir. 1994); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997); Batista v. Rodriguz, 702 F.2d 393, 398 (2nd Cir. 1985); Ajaj v. United States, 479 F.Supp. 2d 501, 538 n. 16 (D.S.C. 2007); Morva v. Johnson, No. 09-515, 2011 WL 3420650 at * 7 (W.D.Va. Aug. 4, 2011)[Plaintiff failed "to establish that a Defendant violated a constitutional right by harassing, threatening, or ridiculing him . . . ."]; DePaoa v. Taylor, No. 10-398, 2011 WL 2445859 at * 9 (W.D.Va. June 15, 2011)["[A]n institutional employee's verbal harassment of an inmate or idle



threats made to an inmate, even if they cause an inmate fear, anxiety or discomfort, do not present a claim of constitutional magnitude."], <u>adopted by</u>, 2011 WL 3105336 (W.D.Va. July 25, 2011), <u>aff'd.</u>, 470 Fed. Appx. 186 (4th Cir. Mar. 27, 2012).

Therefore, while the Court (assuming Plaintiff's allegations to be true for purposes of Defendants' motions) certainly does not approve of or condone such conduct or activities, they provide no basis for a claim for damages under § 1983. <u>Cf</u>. <u>Musto v. Trinity Food Service, Inc.</u>, No. 07-231, 2010 WL 3565723 at * 13 (M.D.Fla. 2010)[Finding that although "racial epithets are repulsive and generally the weapon of the uncivilized, . . . verbal harassment does not state a claim for relief in a federal civil rights action."]. This claim is subject to dismissal.

## IV.

Plaintiff also appears to allege that the Defendants were at fault for him having been attacked by another inmate named Cole. Defendants contend that Plaintiff has provided no evidence "outside of his own assertions and accusations" to support any such claim, and the undersigned in constrained to agree.[14]

---

[14]While Plaintiff complains in his brief that he wanted to obtain copies of Inmate Cole's medical records (presumably to show some type of medical condition suffered by Cole that might relate to the alleged attack), but was denied access to those records, a review of the docket does not establish that Plaintiff properly pursued any such materials. The docket reflects that Plaintiff had originally filed two motions to compel, apparently straight with the Court without ever actually having served any discovery requests on the Defendants. <u>See</u> Court Docket Nos. 38, 51. In any event, those motions were both denied, without prejudice, since the Defendants at that time had a pending motion to dismiss, and Plaintiff was specifically advised in those Orders that he could re-file his motions to compel if the motion to dismiss was denied. <u>See</u> Court Docket Nos. 54, 55. Plaintiff then filed motions to compel and for sanctions, which were denied because there was no evidence that Plaintiff had ever served any discovery requests on counsel for the Defendants. <u>See</u> Court Docket Nos. 57, 61, 62, 63, 64, 65, 67. <u>See also</u> Local Rule 37.01, D.S.C. [Providing that relevant discovery requests and responses, if any, shall be filed with supporting documentation with a motion to compel].



To the extent Plaintiff is claiming that the Defendants put his personal safety at risk by housing him with inmate Cole, in order to avoid to avoid summary judgment on this claim Plaintiff must have evidence sufficient to create a genuine issue of fact both that he was detained or incarcerated "under conditions posing a substantial risk of serious harm"; <u>Brown v. Harris</u>, 240 F.3d 383, 388-389 (4th Cir. 2001), quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994); and that the offending official(s) had "a sufficiently culpable state of mind". <u>Farmer</u>, 511 U.S. at 834. In other words, a jail official cannot be found liable for a constitutional violation "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference". <u>Farmer</u>, 511 U.S. at 837; <u>see</u> <u>also</u> <u>Pruitt</u>, 2003 WL 23851094 at * 9 [Deliberate or callous indifference on the part of prison officials to a specific known risk of harm states a constitutional claim]; <u>Levy</u>, No. 96-4705, 1997 WL 112833 (N.D.Ill. Mar. 11, 1997)["A defendant acts with deliberate indifference . . . if he or she 'knows of and disregards' an excessive risk to inmate health or safety].

There is no evidence before the Court to give rise to a genuine issue of fact that any named Defendant was deliberately indifferent to a known risk of harm to the Plaintiff, as there is no evidence (other than Plaintiff's own conclusory and self serving opinions) that any named Defendant harbored any type of animosity towards him, or that there was any danger associated with placing Plaintiff in the same cell with an inmate named Cole. There is no evidence to show that Cole had ever made any threats against the Plaintiff, that it had ever been determined that Plaintiff and Cole should not share a cell or that Cole was otherwise unreasonably dangerous, that Cole had ever carried out any threats or acts of violence against the Plaintiff prior to the incident alleged in the

- 17 -



Complaint, or of any other altercation or animosity between these two inmates. <u>Farmer</u>, 511 U.S. at 842 [To establish a prima facie case of deliberate indifference a plaintiff must show "that a substantial risk of [serious harm] was long standing, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it"]; <u>cf.</u> <u>Parrish v. ex rel. Lee v. Cleveland</u>, 372 F.3d 294, 302-303 (4th Cir. 2004)[Situation must be evaluated as the officers reasonably perceived it, "not as it now may be perceived enlightened by the benefit of hindsight"]; <u>House</u>, 824 F.Supp. at 485 [Plaintiff's conclusory allegations insufficient to maintain claim]; <u>Morgan</u>, 829 F.2d at 12 ["Even though <u>pro se</u> litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"].   Therefore, this claim is without merit.

## V.

Finally, although Plaintiff amended his Complaint on January 9, 2013 to add the SCDC as a party Defendant under a negligence theory pursuant to the South Carolina Tort Claims Act (SCTCA), it is unclear what "negligence" is being asserted.  Plaintiff's main claim for liability in his Complaint relates to his medical care, a claim which has already been dismissed to the extent it may have been intended to have been asserted as a state law claim.  <u>See</u> discussion, <u>supra</u>.  The only possible claim remaining would be Plaintiff's claim relating to the assault by inmate Cole.

With respect to that claim (again, assuming for purposes of summary judgment that that is even the state law claim Plaintiff has intended to assert), the SCTCA provides a limited waiver of immunity by state and local governmental entities.  <u>See</u> S.C. Code Ann. § 15-78-10, <u>et</u> <u>seq</u>.  Specifically, the SCTCA waives the State of South Carolina's sovereign immunity in *state*



*court* for certain tort claims, but specifically reserves South Carolina's Eleventh Amendment immunity from suit in federal court.  <u>See</u> S.C. Code Ann. § 15-78-20(e) [Nothing in this chapter is construed as a waiver of the state's . . . immunity from suit in federal court under the Eleventh Amendment to the Constitution of the United States . . . ."].  While it is possible for the State to waive its immunity; <u>cf</u>. <u>Union Pacific Railroad Company v. La. Public Service Commission</u>, 662 F.3d 336, 341 (5th Cir. 2011)["[T]he central inquiry in determining a waiver of Eleventh Amendment immunity [is] whether the State's litigation conduct constituted a voluntary invocation of federal jurisdiction"]; <u>Lapides v. Board of Regents of the Univ. System of Georgia</u>, 535 U.S. 613, 619 (2002)[A state's voluntary appearance in federal court waives sovereign immunity to claims where a state has consented to suit in its own courts for such claims]; the Defendant SCDC has specifically asserted its immunity from suit in this Court from any state law negligence claim.  <u>See</u> Answer, ¶¶ 5-8; <u>Defendants' Brief</u>, at p. 15; <u>see also</u> <u>DeCecco v. University of South Carolina</u>, 918 F.Supp.2d 471, 498-499 (D.S.C. 2013)[Finding no waiver where defense was raised in Answer and in motion after close of discovery].  Therefore, while Plaintiff could possibly pursue such a claim against the Defendant SCDC in state court, this Defendant is entitled to dismissal of this claim in this lawsuit.[15]

---

[15]In the event there may be a statute of limitations issue, dismissal of this claim will not prejudice the Plaintiff, as federal law provides for tolling of statutes of limitation for state claims during the period they were pending in federal court and for thirty days afterwards.  <u>See</u> 28 U.S.C.A. § 1367(d); <u>Jinks v. Richland County</u>, 538 U.S. 456 (2003); <u>Hedges v. Musco, et al.</u>, 204 F.3d 109, 123-124 (3rd Cir. 2000); <u>Beck v. Prupis</u>, 162 F.3d 1090, 1099-1100 (11th Cir. 1998) ["a dismissal under section 1367 tolls the statute of limitations on the dismissed claims for 30 days"]; <u>Seabrook v. Jacobson</u>, 153 F.3d 70, 72 (2d Cir. 1998)["Section 1367(d) ensures that the plaintiff whose supplemental jurisdiction is dismissed has at least thirty days after dismissal to refile in state court."].  <u>Cf</u>. <u>Nat'l Federation of Independent Business v. Sebelius</u>, 132 S.Ct. 2566, 2592 (2012).



**Conclusion**

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be dismissed.[16]

The parties are referred to the Notice Page attached hereto.



_____
Bristow Marchant
United States Magistrate Judge

August 29, 2013
Charleston, South Carolina

---

[16]Plaintiff's state law claim for negligence against the Defendant SCDC should be dismissed without prejudice.  See n. 15, supra.

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4ᵗʰ Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

